UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS A. GLINSKI | : CIVIL ACTION NO. 3:01-CV-01167 (SRU) |
| Plaintiff, | : |
| vs. | : |
| NATIONAL SURETY CORPORATION | : |
| Defendant. | : JULY 8, 2004 |

**DEFENDANT'S TRIAL BRIEF
RE UNITED STATES AVIATION UNDERWRITERS POLICY**

**I.   INTRODUCTION**

During the first day of this court trial in the course of argument concerning whether there was as missing indispensable party the plaintiff first enunciated his position on why he claims that the United States Aviation Underwriters policy that was in effect at the time of the plaintiff's accident does not provide coverage for the tortfeasor, Mr. Carlson.  This is an issue that never has been briefed and the defendant believes that it would be beneficial for its analysis to be set out for the Court.  Accordingly, this trial brief is for the limited purpose of addressing the United States Aviation Underwriters policy.  Other issues in the case will be addressed orally, as requested by the Court.

**II.     DISCUSSION**

**A. The United States Aviation Underwriters Policy Would Provide Coverage To Joseph Carlson, The Employee Of AMR Combs, Inc. Who Was driving the Dart Refueler That Was Involved in the Accident With Plaintiff.**

Under the insuring agreements, the policy provides as follows:

**D.     COMPREHENSIVE AIRPORT LIABILITY COVERAGE – COVERAGE D**

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence.

In reviewing this broad coverage grant, the only defined terms included in the coverage grant are: "insured"; "bodily injury"; and "occurrence". Under the definitions section "insured" means: "1.(a) any officer or employee of the named insured while acting within the scope of his employment and/or on behalf of his employer". Thus, Mr. Carlson while driving the Dart Refueler, was acting in the course and scope of his employment and would be an insured under this policy. The facts of the present matter would also satisfy the definitions of bodily injury and occurrence.

Mr. Carlson would be an insured under the United States Aviation Underwriters policy and the policy would respond on his behalf unless an exclusion applied to bar coverage. Our review of the exclusions, as discussed in court, focused on the only applicable exclusion contained in this policy that would bar coverage for Mr. Carlson. That exclusion is:

2

> **B.** **<u>AIRCRAFT LIABILITY COVERAGE – COVERAGE A</u>**
> **<u>AIRCRAFT MEDICAL PAYMENTS COVERAGE–COVERAGE B</u>**
> **<u>COMPREHENSIVE AIRPORT LIABILITY COVERAGE–COVERAGE D</u>**
> **<u>PREMISES MEDICAL PAYMENTS COVERAGE-COVERAGE E</u>**
>
> This insurance does not apply:
>
> . . .
>
> 2. to bodily injury or medical expense incurred by any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the insured under a covered contract;

As discussed in court, this exclusion would, on its face, bar coverage. However, should the court find that plaintiff may pursue this action against Carlson under Connecticut General Statues (CGS) §31-293a, the defendant respectfully submits that CGS §31-293a would apply to the analysis of the United States Aviation Underwriters policy. CGS§31-293a reads as follows:

> §31-293a. No Right Against Fellow Employee: Exception
>
> If an employee or, in case of his death, his dependent has a right to benefits or compensation under this chapter on account of injury or death from injury caused by the negligence or wrong of a fellow employee, such right shall be the exclusive remedy of such injured employee or dependent and no action may be brought against such fellow employee unless such wrong was willful or malicious or the action is based on the fellow employee's negligence in the operation of a motor vehicle as defined in section 14-1. For purposes of this section, contractors' mobile equipment such as bulldozers, powershovels, rollers, graders or scrapers, farm machinery, cranes, diggers, forklifts, pumps, generators, air compressors, drills or other similar equipment designed for use principally off public roads are not "motor vehicles" if the claimed injury involving such equipment occurred at the worksite on or

> after October 1, 1983.  No insurance policy or contract shall be accepted as proof of financial responsibility of the owner and as evidence of the insuring of such person for injury to or death of persons and damage to property by the Commissioner of Motor Vehicles required by chapter 246 [FN1], if it excludes from coverage under such policy or contract any agent, representative or employee of such owner form such policy or contract.  Any provision of such an insurance policy or contract effected after July 1, 1969, which excludes from coverage thereunder any agent, representative or employee of the owner of a motor vehicle involved in an accident with a fellow employee shall be null and void.

The United States Aviation Underwriters policy contains the following section:

> **V.   TERMS OF POLICY CONFORMED TO STATUTE**
>
> Terms of this policy which are in conflict with the Statutes, Military or Civil Regulations of the State, Province or Territory wherein this policy has application, are hereby amended to conform to such statute.

Since the "bodily injury…by any employee" exclusion under the United States Aviation Underwriter policy would bar coverage to Carlson in this matter, i.e., no defense and no indemnity to Glinski's claim, if the Court finds that CGS §31-293a applies to plaintiff's claims, then under CGS §31-293a the Court should find that the "bodily injury…by any employee" exclusion in the United Sates Aviation Underwriters policy is "null and void" as applied to a suit against a fellow employee in the operation of a motor vehicle under the statute.  Furthermore, the United States Aviation Underwriters policy under Section V Terms of Policy Conformed to Statute, contemplated that its policy would be amended to conform to applicable state statutes.  Accordingly, if the Court were to conclude, contrary to the defendant's position, that the refueler

4

is a motor vehicle, then the United States Aviation policy would provide coverage to Mr. Carlson, the fellow employee.

**B.    Contrary To The Plaintiff's Argument, Although The United States Aviation Underwriters Policy Excludes Certain Vehicles Based Upon The Definition Of Automobile, That Exclusion Does Not Apply Here And Thus, The Present Matter Would Not Be Excluded Under The United States Aviation Underwriters Policy.**

As set forth above in Point I, the word "automobile" does not appear in the coverage grant. Thus, there is no reason for this court to interpret the word "automobile" under that policy in reaching a decision as to whether there is coverage under the United States Aviation Underwriters Policy. The word "automobile" does appear in Exclusion E.2. which reads as follows:

> This insurance does not apply:
>
> . . .
>
> 2.   to bodily injury, property damage or medical expense arising out of the ownership, maintenance, operation, use, loading or unloading of:
>
>> (a)   any automobile owned or operated by or rented or loaned to any insured while away from the airport premises of the Named Insured, or
>>
>> (b)   any other automobile operated by any person in the course of his employment by any insured while away form the airport premises of the Named Insured;
>
> but this exclusion does not apply to the parking of an automobile on insured premises, if such automobile is not

owned by or rented or loaned to any insured;

Exclusion E.2. excludes bodily injury that arose out of the operation of an automobile owned by the insured **while away from the airport premises**. Thus Exclusion E.2. bars coverage from liability for bodily injury arising out of the automobile, but only while off airport premises. Although the exclusion uses the word "automobile", as an exclusion of coverage for off premises, a location exclusion. It is of note that this exclusion is consistent with the National Surety policy which excludes coverage on the airport tarmac, that is, on the airport premises. Thus, as the accident between the plaintiff and Mr. Carlson was on the tarmac, that is, on the airport premises, the United States Aviation policy exclusion is not applicable and the policy is. Had the accident been off of the airport premises the United States Aviation exclusion would have applied and the National Surety policy would have covered the loss.

The plaintiff also has argued that the refueler did not meet the United States Aviation policy's definition of "automobile". While it seems clear that the definition is irrelevant, it seems clear that the plaintiff's position is incorrect. In the policy, automobile is defined as follows:

> "**Automobile**" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto) and which is licensed but does not include "Mobile Equipment".

Again, this matter only arises if the Court concludes that the refueler is "a land motor vehicle . . . designed for travel on public roads", the same issue as involved under the National

Surety policy. However, as the plaintiff has argued that the United States Aviation policy definition of "automobile" does not apply to the refuelers because it applies only to vehicles that are "licensed". That is not correct.

As used in the definition of automobile in the United States Aviation policy, the word "licensed" is not defined. In reviewing the definition of the word "license" and "licensed" in the American Heritage Dictionary, the following was found:

> license
> n.
> 1.a.  Official or legal permission to do or own a specified thing. See Synonyms at permission. b. A document, plate, or tag that is issued as proof of official or legal permission: a driver's license.
> 2.  Deviation from normal rules, practices, or methods in order to achieve a certain end or effect.
> 3.  Latitude of action, especially in behavior of speech. See synonyms at freedom.
> 4.a.  Lack of due restraint; excessive freedom: "when liberty becomes license, dictatorship is near" (Will Durant).
> b.  Heedlessness for the precepts of proper behavior; licentiousness.
>
> tr.v. licensed, licensing, licenses
>
> 1  To give or yield permission to or for.
> 2.  To grant a license to or for; authorize. See Synonyms at authorize.

As set forth in the Ramp Rules And Regulations that govern Bradley International Airport; Exhibit 4, only an authorized vehicle can go on the air operations area ("AOA") a vehicle must be registered and display a current BDL ramp and apron permit under the vehicle's front bumper or left front fender. Under those Ramp Rules And Regulations, all occupants of the vehicle must

be properly badged or escorted by a representative of airport management, Connecticut State Police or other properly badged airport employee. Since vehicular access on the AOA is limited to vehicles immediately necessary for airport operations, and must have authorization from the airport to be on the AOA, the defendant respectfully submits that the authorization provided by the airport would constitute a license to those particular vehicles to be on the AOA and satisfy the meaning of "licensed" as used in the definition of automobile in the United States Aviation policy.

In summary, while the defendant does not believe the word "automobile" applies to the coverage analysis in determining whether the United States Aviation policy would provide coverage to Mr. Carlson in a claim from Mr. Glinsky, the defendant submits that the Dart Refueler, again in the unlikely event that the Court were to rule that it was a motor vehicle, would meet the definition of "automobile" in the United States Aviation Underwriters policy.

**B. Exclusion E. 1 Does Not Apply Here And Thus, The Present Matter Would Not Be Excluded Under The United States Aviation Underwriters Policy Due To That Exclusion.**

The plaintiff also has argued that Exclusion D of the United States Aviation Underwriters policy bars coverage for the Glinski-Carlson accident. That exclusion does not apply to the events alleged.

Exclusion E. 1 reads:

> This insurance does not apply:
>
> 1. to bodily injury, property damage or medical expense arising out of the ownership, maintenance, operation, use, loading or unloading of:
>
>    (a) any aircraft, aircraft goods or products, missile or missile goods or products owned by, rented to, loaned to or held for demonstration or sale by the insured, or
>
>    (b) any aircraft, aircraft goods or products, missile or missile goods or products in flight by or for the account of the Insured;

The facts in evidence are clear. The matter at hand was an accident between two refuelers. Whatever the court concludes them to be, the refuelers are not "aircraft", "aircraft goods or products", a "missile", "missile goods or products", or "products owned, by, rented to, loaned to or held for demonstration or sale by the insured." Carlson would be the "insured", however, the refuelers would not fall within those categories even as to AMR Combs. While the fuel may have been a product the accident clearly and indisputably did not arise out of the ownership, maintenance, operation, use, loading or unloading of the fuel. It arose out of the operation of the refuelers. Accordingly, Exclusion E.1 is inapplicable.

### III.    CONCLUSION

The defendant first contends that the dart Refueler does not meet the definition of motor vehicle either in the applicable statutes or in either of the policies before the Court. However, in the unlikely event that the Court rules to the contrary and finds that CGS §31-293a applies, the

defendant respectfully submits that the United States Aviation Underwriters policy would provide coverage to Carlson for plaintiff's claims. It then would follow that Carlson would not be uninsured and the uninsured motorist provisions of the National Surety policy would not come into play.

        **DEFENDANT,**
        **NATIONAL SURETY CORPORATION**


**BY**_____
    Louis B. Blumenfeld, ct05636
    Cooney, Scully and Dowling
    Hartford Square North
    10 Columbus Boulevard
    Hartford, Connecticut  06106
    Phone: (860) 527-1141
    Fax:    (860) 247-5215

    and

    Alfred C. Constants III, Esq.
    Caron, Constants & Wilson
    201 Route 17 North, Second Floor
    Rutherford, New Jersey 07070
    Phone: (201) 507-3710
    Fax:    (201) 507-3675
    Its Attorneys

# CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to all counsel and *pro se* parties of record on May 7, 2004, as follows:

Steven E. Arnold, Esq.
Stanger & Arnold
29 South Main Street
West Hartford, CT 06107

and to:

Alfred C. Constants III, Esq.
Caron, Constants & Wilson
201 Route 17 North, Second Floor
Rutherford, New Jersey 07070

_____
Louis B. Blumenfeld

#187090